**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOSEPH OPOKU-ARHIN,
Petitioner,

v.

No. 97-2390

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A72-382-677)

Submitted: April 14, 1998

Decided: April 30, 1998

Before LUTTIG and WILLIAMS, Circuit Judges, and HALL,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Laurence F. Johnson, Tarik Hashmi, L. JOHNSON & ASSOCIATES,
P.C., Wheaton, Maryland, for Petitioner. Frank W. Hunger, Assistant
Attorney General, Brenda E. Ellison, Senior Litigation Counsel, Jane
Gomez, Office of Immigration Litigation, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Joseph Opoku-Arhin petitions for review of a final order of the Board of Immigration Appeals (Board) denying his application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C. § 1158(a) (1994). The Act defines a refugee as a person unwilling or unable to return to his native country"because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1994); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). "To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane." Id.; see Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989).

2

We must uphold the Board's determination that Opoku-Arhin is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994).* We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Opoku-Arhin] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Opoku-Arhin, who entered the United States as an alien crewman on March 19, 1992, disagrees with the Board's finding that he failed to qualify for asylum and withholding of deportation. Evidence established that Opoku-Arhin, a native and citizen of Ghana, worked as a navigator in the Ghanian merchant marine from 1980 to 1992. In 1986 he became active in the Campaign for Democracy in Ghana (CDG), a group opposed to the military dictatorship of Flight Lieutenant Jerry Rawlings. Although not a high-ranking member of CDG, Opoku-Arhin attended meetings, distributed leaflets, and contributed financially to the group. On board his merchant marine ship, Opoku-Arhin periodically organized CDG meetings of approximately twenty people. Opoku-Arhin testified that he began to fear persecution for these activities upon learning that a fellow shipmate was denounced by other shipmates for political activity. The shipmate fled Ghana in 1994 amidst rumors he was wanted for questioning.

Opoku-Arhin also testified that his sister told him that a neighbor who was involved in the democracy movement was arrested and beaten in 1994 for participation in political activities. Again according to the sister, the neighbor left the country after his 1994 release from incarceration. Opoku-Arhin further explained that he feared persecution because his wife, whom he married in a customary ceremony in Ghana in 1984, was the organizing secretary for a local branch of the

_____

*We note that 8 U.S.C. § 1105a(a)(4) (1994) was repealed by the Illegal Immigration Reform Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time IIRIRA was passed, 8 U.S.C. § 1105(a)(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of IIRIRA.

3

Popular Front Party (PFP), a group which advocated the overthrow of the Rawlings government. His wife testified that she was arrested in 1985 for participation in a demonstration. She was interrogated, beaten, and forced to sign a statement that she would not participate in any political opposition upon her release. After her release, she fled to the United States. Opoku-Arhin's wife explained that the Ghanian government never knew she and Opoku-Arhin were married because they did not live together as husband and wife until they were reunited in the United States in 1992. Opoku-Arhin testified he fears that someone in the Ghanian community in the United States who knows of their marriage may have informed the Ghanian government of the relationship.

Citing the above evidence, Opoku-Arhin maintains that the Board and IJ erred in finding that he failed to demonstrate a well-founded fear of persecution. As a threshold matter, our review is limited to the decision of the Board, not that of the IJ. See Huaman-Cornelio, 979 F.2d at 999. We find that substantial evidence supports the Board's conclusion that Opoku-Arhin lacked an objective basis to fear persecution in Ghana because of his political opinion.

As the Board noted, Opoku-Arhin was never arrested, detained, interrogated, or otherwise harmed for his political activities. Moreover, while his wife testified to abuse because of her political opinion, testimony established that the Ghanian government did not know that she and Opoku-Arhin were married. Opoku-Arhin's professed fear that Ghanians in the United States may have reported the marriage to the Ghanian government is speculative. The State Department country report in the record notes that the Rawlings regime is now engaged in a dialogue with opposition groups and that there are currently no known political prisoners in Ghana. Because of these changes in country conditions, it is unlikely Opoku-Arhin would face persecution because of his relationship with an individual who has been living abroad for more than twelve years.

Similarly, Opoku-Arhin's expressed fear of mistreatment because of activities he engaged in before his departure more than five years ago lacks an objective basis. And finally, Opoku-Arhin's claim that he is similarly-situated to his fellow shipman and his neighbor, who both experienced difficulties in 1994, is not persuasive because of the

4

change in conditions which makes it clear that he is not in danger of persecution because of mere opposition to the government.

Opoku-Arhin next contends that the IJ violated his right to Due Process because he failed to consider all the evidence in the record and did not provide him with a fair and reasonable hearing. This claim is meritless because the record shows that the IJ thoroughly considered all of the evidence presented and conducted an appropriate and adequate hearing. Opoku-Arhin further maintains that Board and IJ erred in failing to sufficiently consider the past persecution of his wife and those similarly situated, contending that he merited a grant of humanitarian asylum. Because there is no evidence in the record that Opoku-Arhin personally suffered past persecution, we find this contention to be without merit.

Finally, Opoku-Arhin insists he qualified for withholding of deportation. The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. Because substantial evidence supports the Board's finding that Opoku-Arhin is ineligible for asylum, he cannot meet the higher standard for withholding of deportation.

We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5