Gonzalo **RIVERA–CRUZ**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 91–4007

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 18, 1991.

Rehearing and Rehearing En Banc Denied Feb. 3, 1992.

Alfred L. Hansen, New Orleans, La., for petitioner.

Richard Thornburgh, Atty. Gen., U.S. Dept. of Justice, Norah Ascoli Schwarz, Mark C. Walters, Asst. Dir., Civ. Div., Office of Immigration Litigation, Dept. of Justice, Washington, D.C., for respondent.

John B.Z. Caplinger, Dist. Director, INS, New Orleans, La., for other interested parties.

Before POLITZ, KING, and SMITH, Circuit Judges.

KING, Circuit Judge:

Gonzalo Rivera–Cruz ("Rivera") appeals from an order by the Board of Immigration Appeals ("Board") denying his requests for asylum and withholding of deportation. Finding that the Board did not abuse its discretion in denying Rivera's requests, we affirm.

## I.

In August 1979, shortly after the Sandinistas assumed power in Nicaragua, Sandinista soldiers came to the home of Rivera's parents in Managua, searching for Rivera's

older brothers. The soldiers apprehended the brothers and beat them. When Rivera pleaded with the soldiers (or interfered with their arrest, according to the Immigration and Naturalization Service ("Service")), he too was beaten, suffering a broken leg and a broken finger. After being hospitalized for 25 days, Rivera hid for several weeks in the home of a friend. He was informed by his father that the Sandinistas were now looking for him as a result of the encounter, and would arrest him as a supporter of the Somoza regime. He learned as well that his brothers had been sentenced to 25 years in prison for murder. Both brothers are now out of prison.

After his broken leg healed, Rivera fled Managua and went to the city of Grenada where he changed his name and performed menial labor to support his wife and children who were living with his parents in Managua. After being recognized by a Sandinista supporter in Grenada, he fled to Estel and changed his name again. He then moved from town to town for the next several years. During his six years on the run, Rivera was able to take a bus to visit his family at least one weekend per month, and never encountered any difficulties or Sandinistas when visiting.

Rivera and another brother entered the United States illegally at Hidalgo, Texas in 1985. At the time of his entrance to the United States, Rivera was apprehended by the Service and issued an Order to Show Cause. Rivera moved for and was granted a change in venue to New Orleans, Louisiana. In May 1986, he filed his Request for Asylum in the United States in the Service office in New Orleans.

At his hearing before the immigration judge on May 12, 1987, the judge granted Rivera's request for asylum under § 208 of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1158(a), and withholding of deportation under § 243(h) of the INA, 8 U.S.C. § 1253(h).[1] The immigration judge apparently based his grant in part on

the prediction that there would not be a change of government in Nicaragua. He found that Rivera had a well-founded fear of persecution because of his family's pro-Somoza leanings and Rivera's intercession on behalf of his brothers when they were being arrested.

The Service appealed to the Board, contending that Rivera's only contact with the Sandinistas was when he criminally interfered with the arrest of his brothers. He fled, argued the Service, because he was warned he had been accused of assaulting an officer and interfering with an arrest. The Service also contended that Rivera had no reasonable fear of persecution because the new Nicaraguan government had no inclination to punish him for these acts.

On December 6, 1990, the Board sustained the appeal, reversing the decision of the immigration judge. *In re Gonzalo Rivera–Cruz,* file no. A27 677 461 (BIA, Dec. 6, 1990). The Board concluded that in light of the change of government in Nicaragua, Rivera could not establish that he had a well-founded fear of persecution should he return. The Board took administrative notice that in April 1990, Violeta Chamorro was elected President of Nicaragua, and that the Sandinista regime was no longer in power. Given its recognition that the Sandinista government no longer governed Nicaragua, the Board found that Rivera did not have a well-founded fear of persecution by the current government.

The Board further held that "even if one were to assume that [Rivera's] previous experiences in Nicaragua amounted to past persecution, or that at the time he left [Nicaragua] and for some time thereafter he had a well-founded fear of persecution should he return, it is not established that he presently merits a grant of asylum." *Id.* at 3. Citing *Matter of Chen,* Int.Dec. 3104 (BIA 1989), the Board acknowledged that in certain circumstances past persecution alone might warrant a grant of asylum even if there were no likelihood of present

1. After being granted political asylum by the immigration judge on May 12, 1987, Rivera was joined in New Orleans by his wife and sons in October 1988. Rivera has been employed for

three years, and all of his children are enrolled in school. In January 1991, Rivera's wife and sons received their permanent residence cards.

persecution. Such a situation would exist where the past persecution was so severe that return to the country of persecution would be inhumane. Even had petitioner established past persecution, the Board concluded, on the record presented there were no "humanitarian or compelling bases" for granting him asylum on this theory.

The Board held as well that, given petitioner's failure to demonstrate eligibility for asylum, he *a fortiori* could not satisfy the more rigorous standard for withholding of deportation. The Board concluded by granting petitioner a thirty-day voluntary departure period, and alternatively ordered petitioner's deportation to Nicaragua should he not voluntarily depart within that time. Rivera petitions this court for review of the Board's ruling.

## II.

■ The standard for determining if asylum should be granted is whether a reasonable person in the applicant's circumstances would fear persecution. *Guevara Flores v. INS*, 786 F.2d 1242, 1249 (5th Cir.1986), *cert. denied*, 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 757 (1987). It is sufficient under this standard to show that persecution is a reasonable possibility, or that the applicant has a "well-founded" fear of persecution. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 428, 107 S.Ct. 1207, 1211, 94 L.Ed.2d 434 (1987). In order to qualify for withholding of deportation, a "clear probability" of persecution must be shown. *INS v. Stevic*, 467 U.S. 407, 413, 104 S.Ct. 2489, 2492, 81 L.Ed.2d 321 (1984). According to these standards, it is easier to qualify for asylum than for a withholding of deportation. *Cardoza–Fonseca*, 480 U.S. at 443, 107 S.Ct. at 1219; *Guevara Flores*, 786 F.2d at 1250.[2] We accord deference to the Board's interpretation of immigration statutes unless there are compel-

ling indications that the Board's interpretation is incorrect. *Campos–Guardado v. INS*, 809 F.2d 285, 289 (5th Cir.), *cert. denied*, 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987); *Guevara Flores*, 786 F.2d at 1250 n. 8.

■ The Board took administrative notice of the change of governments in Nicaragua and the Sandinistas' loss of power. The Board took notice as well that Chamorro has announced a general amnesty covering the hostilities between the Contra resistance and the Nicaraguan government, and an end to military conscription.[3] Based on the notice of these facts, the Board found that Rivera is not eligible for asylum because persecution under the Chamorro government is not a reasonable possibility and his fears of persecution are not well-founded. Rivera now argues to this court that the Chamorro government is unstable and that the Sandinistas have more power than the Board recognizes, and adduces various newspaper articles to that effect. This court should, argues Rivera, take judicial notice of the frailty of Chamorro's government.

■ Courts allow agencies "wide latitude in taking official notice." *Kaczmarczyk v. INS*, 933 F.2d 588, 596 (7th Cir.1991). Because the taking of notice is committed to the broad discretion of the agency, we review the taking of administrative notice by the Board under the abuse of discretion standard.

■ The Board is entitled to take administrative notice of a change of government. *See, e.g., Kapcia v. INS*, 944 F.2d 702 (10th Cir.1991) (notice taken of Solidarity party becoming member of Polish coalition government); *Kubon v. INS*, 913 F.2d 386, 388 (7th Cir.1990) (same); *United States ex rel. Mercer v. Esperdy*, 234 F.Supp. 611, 616 (S.D.N.Y.1964) (notice tak-

**2.** Normally we review the Board's factual findings to determine if they are supported by substantial evidence. 8 U.S.C. § 1105a(a)(4); *Zamora–Morel v. INS*, 905 F.2d 833, 838 (5th Cir. 1990). The substantial evidence standard requires only that the Board's conclusion be based upon the evidence presented and be substantially reasonable. *Rojas v. INS*, 937 F.2d 186, 189 (5th Cir.1991); *Diaz–Escobar v. INS*, 782 F.2d

1488, 1493 (9th Cir.1986). In this case, however, the Board has made no findings of fact other than the noticed facts.

**3.** *See, e.g., Chamorro Takes Nicaraguan Helm; Hails New Era*, N.Y.Times, April 26, 1990, at A–1 (Violeta Chamorro's inaugural address).

en of unsafe conditions in Haiti). An agency such as the Board may take official notice of "commonly acknowledged facts, [and] ... technical or scientific facts that are within the agency's area of expertise." *McLeod v. INS,* 802 F.2d 89, 93 n. 4 (3d Cir.1986); *see also Ohio Bell Tel. Co. v. Public Util. Comm'n,* 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937); *Kaczmarczyk,* 933 F.2d at 596. According to the Seventh Circuit, in exercising official notice, "administrative agencies may consider commonly acknowledged facts.... The Board's notice of current events bearing on an applicant's well-founded fear of persecution ... falls within this accepted category." *Kaczmarczyk,* 933 F.2d at 593–94 (citing *McLeod,* 802 F.2d at 93 n. 4). The Board may also draw reasonable inferences from the evidence which "comport with common sense." *Kapcia,* 944 F.2d at 702; *Kaczmarczyk,* 933 F.2d at 594; *cf. NLRB v. Milk Drivers & Dairy Employees,* 531 F.2d 1162, 1165 (2d Cir.1976).

▮▮▮▮▮ We are constrained to find that the Board did not abuse its discretion by taking official notice that Chamorro is now in power and the Sandinistas are not. We cannot decide otherwise because there is properly before us no evidence to the contrary. Rivera argues for the first time to this court that Chamorro's regime is crumbling. Rivera's attempt to argue officially

noticed facts for the first time in this forum is misplaced, for we cannot weigh evidence that has not been brought previously before the Board.[4] *See Yahkpua v. INS,* 770 F.2d 1317, 1320 (5th Cir.1985); *Tejeda–Mata v. INS,* 626 F.2d 721, 726 (9th Cir.1980) ("this Court does not sit as an administrative agency for the purpose of fact-finding in the first instance...."), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982). To argue facts concerning the power of the Chamorro regime here, Rivera should have first brought this information before the Board. *Cf. Knox v. Butler,* 884 F.2d 849, 852 n. 7 (5th Cir.1989) (declining to take judicial notice of facts that could have been raised in court below), *cert. denied,* 494 U.S. 1088, 110 S.Ct. 1828, 108 L.Ed.2d 957 (1990). Because we believe that Rivera's failure to contest the Board's official notice may have been caused in part by lack of clarity concerning the procedure by which he could have done so, his contentions require us to look at the process by which applicants may contest facts noticed by the Board.

▮▮▮▮▮ As we have noted, the Board may take notice of "commonly acknowledged facts." *McLeod,* 802 F.2d at 93 n. 4. The INA does not, however, provide a method for applicants who contest such facts to bring their evidence before the Board. *See Kaczmarczyk,* 933 F.2d at 595.[5] In fact, the INA does not expressly

---

4. It is hypothetically possible, though practically unlikely, that the Board might take official notice of a "fact" that a court could recognize as wrong or not "commonly acknowledged." In that situation, the court need not wait for rehearing by the agency, and may, in assessing whether the taking of notice was proper, reverse the noticed finding or remand to the agency for further explanation. We note that the instant case does not present such a situation.

5. We note that the Administrative Procedure Act, 5 U.S.C. § 556(e) ("APA"), provides that "[w]hen an agency decision rests on official notice ... a party is entitled, upon timely request, to an opportunity to show the contrary." 5 U.S.C. § 556(e); *McLeod,* 802 F.2d at 94. The APA approach does not seem supportable, however, under Supreme Court precedent.

The Supreme Court held in *Marcello v. Bonds,* 349 U.S. 302, 310, 75 S.Ct. 757, 762, 99 L.Ed. 1107 (1955), that the statutory provisions of the INA relating to deportation proceedings express-

ly supersede the hearing provisions of the APA. The Court noted that the INA specifies that the procedures designated therein are the "sole and exclusive procedure[s] for deportation proceedings." *Id.;* 8 U.S.C. § 1252(b). The Court stated, moreover, that "this clear and categorical direction was meant to exclude the application of the Administrative Procedure Act," and that the APA "was intended only as a model." 349 U.S. at 309, 75 S.Ct. at 761. The Court also stated as follows:

[W]e cannot ignore ... the direction in the statute that the methods therein prescribed shall be the sole and exclusive procedure for deportation proceedings. Unless we are to require Congress to employ magical passwords in order to effectuate an exemption from the Administrative Procedure Act, we must hold that the [INA] expressly supersedes the hearing provisions of that Act.

*Id.* at 310, 75 S.Ct. at 762. The APA's hearing procedures are therefore not applicable to the instant case. *See Kaczmarczyk,* 933 F.2d at 595.

entitle asylum applicants to rebut noticed facts, nor does it require the Board to alert applicants prior to hearing that it is taking official notice of facts.

This does not mean that the applicant in a deportation proceeding has no opportunity to be heard regarding the noticed facts. "It is a fundamental proposition of administrative law that interested parties must have an effective chance to respond to crucial facts." [6] *Carson Prods. Co. v. Califano,* 594 F.2d 453, 459 (5th Cir.1979); *See Banks v. Schweiker,* 654 F.2d 637, 641 (9th Cir.1981) (parties must be given an opportunity to present information "which might bear upon the ... truth of the matter noticed").

 While not explicitly referring to the taking of notice, 8 C.F.R. § 3.2 provides that an asylum applicant may move to reopen his case to present new evidence to the Board between the time the Board renders a decision and the time the applicant is ordered to depart the United States.[7] *See*

*Kaczmarczyk,* 933 F.2d at 597; *Chavarria v. United States Dep't of Justice,* 722 F.2d 666, 669 (11th Cir.1984). Such motions will be granted if the evidence sought to be offered is material and was not available or discoverable at the earlier hearing.[8] 8 C.F.R. § 3.2. The motion to reopen provides asylum applicants, such as Rivera, with an opportunity to be heard regarding facts officially noticed and to present contrary evidence. *See generally Kaczmarczyk,* 933 F.2d at 597 (finding the motion to reopen mechanism sufficient to satisfy an applicant's Fifth Amendment right to a fair asylum proceeding). Applicants may then appeal the Board's denial of a motion to reopen to the court of appeals. *Dokic v. INS,* 899 F.2d 530, 532 (6th Cir.1990) ("If the BIA were to deny the motion, petitioner could then challenge the BIA's decision in this Court...."). Judicial review of motions to reopen will ensure that Board decisions to take official notice in the face of petitioners' protests do not deprive them of

We have recognized the Supreme Court's determination that the APA does not apply to deportation hearings under the INA. *See Hodge v. United States Dep't of Justice,* 929 F.2d 153, 155 n. 2 (5th Cir.1991) ("we cannot conclude that the Supreme Court intended to leave open the possibility that the APA would 'govern' deportation proceedings [even in places where] the INA and the APA become functionally equivalent"); *Ho Chong Tsao v. INS,* 538 F.2d 667, 669 (5th Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1176, 51 L.Ed.2d 582 (1977); *Ambra v. Ahrens,* 325 F.2d 468, 471 n. 3 (5th Cir.1963).

6. *See Kaczmarczyk,* 933 F.2d at 596 n. 7 (citing *Report of the Attorney General's Committee on Administrative Procedures in Government Agencies* 71–73 (1941) (cited in 4 J. Stein, *Administrative Law,* § 25.01 n. 7 (1986))):

[A] noticed fact ... may actually be wrong. Or, as is far more likely ... there may be room for reasonable disagreement concerning the significance of the facts which are noticed, and the deductions to be drawn from them....

The parties, then, are entitled to be apprised of the data upon which the agency is acting. They are entitled not only to refute but, what in this situation is usually more important, to supplement, explain, and give different perspective to the facts upon which the agency relies.

7. Title 8 C.F.R. § 3.2 states, in pertinent part:

§ 3.2 Reopening or reconsideration.

... Reopening or reconsideration of any case in which a decision has been made by the Board, whether requested by the Commissioner or any other duly authorized officer of the Service, or by the party affected by the decision, shall be only upon written motion to the Board. Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him and an opportunity to apply therefor was afforded him at the former hearing unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing. A motion to reopen or a motion to reconsider shall not be made by or in behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States. Any departure from the United States of a person who is the subject of deportation proceedings occurring after the making of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion.

8. It is well established that the regulations place the burden of proof upon the asylum applicant. 8 C.F.R. § 242.17(c); *Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1042 (5th Cir.Unit B 1982); *Chavarria,* 722 F.2d at 669.

fair asylum hearings. *Kaczmarczyk*, 933 F.2d at 597.

In the instant case, Rivera never submitted the newspaper articles as evidence before the Board, nor has he moved the Board to reopen his case.[9] Consequently, Rivera's contention that conditions in Nicaragua are other than as officially noticed by the Board is not properly before this court and provides no basis for relief.

### III.

 Rivera contends in the alternative that he merits a discretionary grant of asylum under the analysis of *Matter of Chen*, Int.Dec. 3104 (BIA 1989). Under *Chen*, a grant of asylum may be proper under certain circumstances even if there is no reasonable likelihood of present persecution. Discretionary asylum may be granted if the past persecution was so severe that repatriation of the applicant would be inhumane. *Id.* at 4–5. In *Chen* the petitioner was systematically tortured for eight years during China's Cultural Revolution on account of his religious beliefs. During that period he was locked in a room for six months, continually beaten and starved, and denied medical care. *Id.* at 5–6.

Even if this court accepts Rivera's claim of past persecution, the facts of the instant case do not indicate a level of persecution such that repatriation would be inhumane. *Compare Chen* at 5–6, *with Rojas v. INS*, 937 F.2d 186, 189–90 (5th Cir.1991) (affirming denial of discretionary asylum to applicant who was arrested, beaten, tortured, and later fired from his job and denied other employment by Nicaraguan government). We find no error in the Board's refusal to find a humanitarian or compelling basis to grant asylum for past persecution in the instant case.

Because Rivera has failed to satisfy the lower burden of proof required for asylum,

we need not decide whether Rivera is eligible for withholding of deportation. Rivera's failure to establish a "well-founded fear" of persecution necessarily implies that he is unable to satisfy the more demanding standard of "clear probability" of persecution. *See Kubon*, 913 F.2d at 388; *Diaz–Escobar*, 782 F.2d at 1492.

### IV.

Accordingly, the decision of the Board is AFFIRMED.

---

**9.** Because Rivera has not yet been ordered to depart the country, he is free to petition the Board to reopen his case in order to present evidence concerning the noticed change in governments in Nicaragua. *See* 8 C.F.R. § 3.2. Our affirmance has no res judicata effect upon

Rivera's motion to reopen, should he choose to file one. We specifically requested supplemental briefing on this issue from the Service, which confirmed that Rivera was free to file a motion to reopen at any time during or following the pendency of this appeal.