**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

IYESATA GASSAMA,
Petitioner,

v.

No. 96-2004

U.S. IMMIGRATION &
NATURALIZATION SERVICE,
Respondent.

On Petition for Review of a Decision
of the Board of Immigration Appeals.
(A72-369-277)

Submitted: March 18, 1997

Decided: April 8, 1997

Before HALL, HAMILTON, and LUTTIG,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Richard S. Fishbein, JOHN O'LEARY & ASSOCIATES, Washing-
ton, D.C., for Petitioner. Frank W. Hunger, Assistant Attorney Gen-
eral, David M. McConnell, Assistant Director, John J. Andre, Office
of Immigration Litigation, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Iyesata Gassama petitions for review of a final order of the Board of Immigration Appeals (Board) denying asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

Gassama, a native and citizen of Sierra Leone, entered the United States as a visitor on August 29, 1991. She overstayed her authorized time, and has conceded her deportability. Following a hearing, the Immigration Judge (IJ) denied Gassama's petitions for asylum and withholding of deportability but granted voluntary departure. Her appeal to the Board was dismissed, and Gassama timely petitioned this court for review of the Board's order.

I

Gassama was born in Sierra Leone in 1960. She and her husband, both from the Mandingo tribe, lived in the eastern province of Kailuhun, where they were property owners and business people. They were both contributing members of the ruling APC party. The APC party was replaced by the NPRC. This government was opposed by a rebel group supported by the National Patriotic Front of Liberia (NPFL). In 1991, rebels from Liberia crossed the border into eastern and southern Sierra Leone, killing many and uprooting thousands of others. Gassama fled to Freetown with her mother and son, but her husband stayed to try to salvage some of their property. He was killed by the NPFL. Gassama believes that he was identified by neighbors of the Mende tribe as a businessman and property owner. She asserts that the Mende neighbors wanted to harm him because he refused to join their secret society, and filed a lawsuit to restrain them from enlisting him. Gassama fears that she, too, will suffer at the hands of the Mendes.

2

Gassama asserts that she also fears retribution from the "boy soldiers," young members of the government militia, because they believe that her husband was improperly given money from a government minister in the former APC government. Gassama received a call from the wife of this minister, telling her that the boy soldiers stated Gassama would pay for her husband's wrongs.

The IJ held that Gassama had not established a trait or characteristic for which she would be persecuted; that she showed no evidence of conflict between the Mende and Mandingo tribes to support her speculation about the Mendes; and that she had failed to prove fear of persecution because of former ties to the APC government. The IJ found that the possibility of an investigation into her husband's misuse of government funds would not amount to persecution.

The Board dismissed the appeal. The Board found that Gassama had not established that the death of her husband was orchestrated by the Mendes. She was not present, and did not clearly explain how she gained her information. The testimony she did present suggests that the Mendes did not discriminate against Mandingos, as they wanted Gassama's husband to join their secret society. As to the claim of persecution by the government, the Board held that, while Gassama presented evidence that former government ministers were arrested and questioned, there was no evidence that business associates or their family members had been arrested. Further, criminal prosecution does not in itself constitute persecution.

II

A refugee qualifies for asylum if he is unable or unwilling to return to the country of his nationality because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1996). The well-founded fear standard contains both a subjective and an objective component. INS v. Cardoza-Fonseca, 480 U.S. 421, 430-32 (1987). The subjective element requires a genuine fear on the part of the alien. Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective component requires credible, specific, direct evidence supporting a reasonable

3

fear that the alien faces persecution. Id.; Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

We must uphold the Board's decision if it is supported by substantial evidence from the record as a whole. Huaman-Cornelio, 979 F.2d at 999. A reviewing court can reverse the Board only if the evidence "was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

Deportation of any alien will be withheld if she can establish a "clear probability of persecution upon her return." Cardoza-Fonseca, 480 U.S. at 431-32. This standard is more stringent than the asylum standard of a well-founded fear of persecution. Huaman-Cornelio, 979 F.2d at 1000.

III

Gassama first argues that the Board failed to address some of her claims. But we conclude that the only issue Gassama specifically mentions as being disregarded by the Board, that a member of a social group may be persecuted for financial reasons, is merely a convolution of claims fully addressed by the Board. Therefore, this argument lacks merit.

Next, Gassama asserts that the Board unreasonably required corroboration of her testimony, misinterpreting the holding in Matter of Dass, 20 I. & N. 120 (BIA 1989). But Dass requires that the alien's testimony be corroborated where such evidence is available. We agree with the Board that based on her testimony, such corroboration should have been available. Therefore, this claim also entitles Gassama to no relief.

Finally, Gassama argues that the Board erred in dismissing arguments before it because they were not presented to the IJ. Again, the only issue specifically rejected by the Board on this ground was a more attenuated version of an argument dismissed on its merits by the Board. The claim is without merit.

4

Because Gassama has failed to meet the less stringent burden of proof for asylum, we need not decide whether she is eligible for withholding of deportation under 8 U.S.C.A. § 1253(h) (West Supp. 1996). Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991). We affirm the Board's ruling denying Gassama asylum and withholding of deportation. We deny Gassama's motion to replace the reply brief. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5