**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ELIZABETH DOMINGO,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 96-1554

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A29-922-951)

Submitted: December 30, 1997

Decided: January 26, 1998

Before MURNAGHAN and NIEMEYER, Circuit Judges, and
STAMP, Chief United States District Judge for the
Northern District of West Virginia, sitting by designation.

_____

Petition denied by unpublished per curiam opinion.

_____

**COUNSEL**

Eric R. Bowman, IMMIGRATION LAW CENTER, Alexandria, Vir-
ginia, for Petitioner. Mark C. Walters, Assistant Director, William C.
Erb, Jr., Office of Immigration Litigation, Civil Division, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Elizabeth Domingo, a native and citizen of Nigeria, petitions for review of a final order of the Board of Immigration Appeals ("Board") denying her application for asylum and withholding of deportation. This court previously granted Petitioner's motion to submit the case for decision on the briefs without oral argument. Upon consideration of the briefs and the administrative record, we deny the petition.

Domingo is a practicing Catholic who claims that she has been persecuted by the Muslim government in Nigeria. She fears that if she returns to Nigeria, she will be subjected to further persecution based on her faith.

To establish eligibility for a grant of asylum, an alien must demonstrate that she is a "refugee" within the meaning of the Immigration and Nationality Act (the "Act"). The Act defines a "refugee" as a person unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1994); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. The subjective element requires that the applicant present "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

2

Eligibility for asylum also can be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane. See id.

We must uphold the Board's determination that Domingo is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994). We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Domingo] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Domingo testified that she had worked for the Former Chief Justice of Nigeria, a devout Christian, and that when he retired to become head of the Nigerian Law Reform Committee, the government refused to let her continue to work for him. She also testified that her new employer, the Principal Business Secretary to the President, pressured her to become a Muslim, but she refused. When the government moved the capital of Nigeria from Lagos to Abuja, Domingo attempted to resign so she would not have to move her family to a Muslim-dominated city. However, her boss refused to accept her resignation. She decided to continue working and move to Abuja because she was afraid she would "disappear" if she refused.

In Abuja, Domingo worked for a Christian, but her former boss demanded that she become a Muslim and wear Muslim garb. She refused. Domingo testified that one day in Abuja, she was attacked by about twenty people wielding machetes while she was on her way to church. Her driver was uninjured. She believed her former boss ordered the attack in retaliation for her refusal to become a Muslim. She also testified that in 1991, Muslims set fire to a church in Nigeria, killing approximately 500 people and that the government took no action. Domingo left the country and arrived in the United States in 1992.

3

Although the employment actions and pressure by one of Domingo's bosses for her to become a Muslim were objectionable, this type of discrimination does not amount to persecution within the meaning of the Immigration and Nationality Act. See Bereza v. INS, 115 F.3d 468, 472 (7th Cir. 1997) (holding that to constitute persecution, conduct must amount to more than mere harassment); Balazoski v. INS, 932 F.2d 638, 642 (7th Cir. 1991) (defining persecution as more than merely facing harassment in the form of questioning for participation in a protest march). See generally Kazlauskas v. INS, 46 F.3d 902 (9th Cir. 1994) (being ostracized and harassed by teachers and peers based on religious and political beliefs and being denied advancement to university on this basis not persecution). Furthermore, two of her supervisors were Christian, Domingo was able to attend church weekly, and she presented no evidence that her assault by thugs was more than an incident of lawlessness.

Substantial evidence also supports the Board's finding that Domingo failed to establish a pattern or practice of persecution of Catholics by Muslims in Nigeria. Her report of one attack on Christians, while reprehensible, fails to establish a pattern of persecution. The State Department materials in the record specifically state that most reports of persecution of Nigerian Christians by Nigerian Muslims "greatly exaggerate the extent of discrimination against Christians." The report notes that Christians hold prominent positions throughout Nigerian society, including the government, and that Christians who encounter problems with Muslims in some areas can move to areas in Nigeria where Christians are in the majority.

The standard for withholding of deportation is more stringent than that for asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. As Domingo has not established entitlement to asylum, she cannot meet the higher standard for withholding of deportation.

Accordingly, we deny the petition for review.

PETITION DENIED