**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HIRUT TADESSE,
Petitioner,

v.

No. 97-1972

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A72-378-146)

Submitted: March 24, 1998

Decided: May 15, 1998

Before WILKINS and LUTTIG, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Petition denied by unpublished per curiam opinion.

_____

**COUNSEL**

Janis M. Clay, LAW OFFICES OF JANIS M. CLAY, Minneapolis,
Minnesota; Gregory L. Wilmes, WILMES & ASSOCIATES, Minne-
apolis, Minnesota, for Petitioner. Frank W. Hunger, Assistant Attor-
ney General, Richard M. Evans, Assistant Director, Marshall Tamor
Golding, Office of Immigration Litigation, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Hirut Tadesse petitions for review of a final order of the Board of Immigration Appeals (BIA) denying her application for asylum and withholding deportation. Because substantial evidence supports the BIA's decision, we deny the petition.

I.

To establish eligibility for asylum, an alien must demonstrate that she is a refugee within the meaning of the Immigration and National-ity Act (Act). The Act defines a refugee as a person unable or unwill-ing to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc). The alien bears the burden of proving that she is a refugee as defined by the Act. See 8 C.F.R. § 208.13(a) (1997).

"[A] grant of asylum may, in select circumstances and as a matter of discretion, be founded solely on the basis of past persecution." Matter of H-, Interim Dec. 3276, 1996 WL 291910 (BIA 1996); see also Matter of Chen, 20 I. & N. Dec. 16, 18 (BIA 1989). A finding of past persecution creates a rebuttable presumption of a well-founded fear of similar future persecution. See 8 C.F.R. § 208.13(b)(1)(i); Matter of H-, 1996 WL 291910. This presumption can be rebutted by a showing that conditions in the country of origin have substantially changed since the time of the past persecution such that the alien no longer has a well-founded fear of being persecuted upon return. See 8 C.F.R. § 208.13(b)(1)(i); Matter of H-, 1996 WL 291910; Chen, 20 I. & N. Dec. at 18.

2

Eligibility for asylum can also be based on past persecution even though there is no likelihood of present persecution, if the alien can show that compelling reasons, such as the severity of past persecution, render repatriation inhumane. See 8 C.F.R. § 208.13(b)(1)(ii); Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992); Matter of H-, 1996 WL 291910; Chen, 20 I. & N. Dec. at 19. If an alien establishes past persecution but the record shows that conditions have so changed that there is little likelihood of future persecution, asylum, nevertheless, may be granted at the BIA's discretion if warranted by humanitarian considerations. See Matter of B-, Interim Decision 3251, 1995 WL 326740 (BIA 1995).

We must uphold the BIA's determination that Tadesse is not eligible for asylum if that determination is supported by substantial evidence. See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). The decision may only be reversed if the evidence was such "that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." Id.

II.

The evidence established that Tadesse, an Ethiopian native of Amhara ethnicity, and her family are members of the Pentecostal Evangelical Church in Ethiopia. The Marxist-Leninist Mengistu dictatorship, which was in power in Ethiopia until 1991, forbade church worship and wanted Tadesse and her family to abandon their religion. Tadesse and her family members were repeatedly arrested and beaten in attempts to force them to give up their faith.

In 1991 a new democratic government came to power; the new government was composed primarily of Ethiopians of Tigrean ethnicity. The Tigrean government ratified a new constitution in 1994, which guarantees freedom of worship, expression, association, peaceable assembly, and the right to engage in political activity. The State Department profile on Ethiopia under the new government relates that the human rights abuses prevalent under the Mengistu dictatorship have ended. The report also states that there is no evidence that the Tigrean government is targeting Amharas for mistreatment; in fact, many high-ranking government officials are Amharas. Overall, the report shows that the changes brought about by the Tigrean govern-

3

ment are broad, and that those persecuted under the Mengistu regime are no longer in danger of persecution.

Tadesse maintains that the BIA erred in finding that although she suffered past persecution on account of her religion under the Mengistu regime, conditions in Ethiopia had substantially changed such that she no longer had a well-founded fear of future religious persecution. Tadesse also contends that the BIA erred in finding that the past persecution she suffered did not merit a grant of asylum on humanitarian grounds. Finally, Tadesse contends that even assuming conditions in Ethiopia had substantially changed such that she no longer had a well-founded fear of religious persecution, she still has a well-founded fear of persecution on account of her father's political opinion which the new government imputes to her, her family membership, and her Amhara ethnicity.

III.

The BIA determined that Tadesse suffered past religious persecution and presumed that she had a well-founded fear of future persecution in Ethiopia. See 8 C.F.R. § 208.13(b)(i). However, the BIA determined that this presumption was rebutted by evidence showing that conditions in Ethiopia relative to freedom of religion had substantially changed such that there was little likelihood that Tadesse would experience similar religious persecution in the future. See Chen, 20 I. & N. Dec. at 18. Although Tadesse and her family were persecuted under Mengistu due to their religion, the evidence discloses that the new government respects freedom of religion and guarantees it in the new constitution. Tadesse offered no evidence to show that her family continues to be persecuted under the Tigrean government due to their religion. See Matter of H-, 1996 WL 291910; Chen, 20 I. & N. Dec. at 18. Thus, substantial evidence supports the BIA's finding.

IV.

The BIA determined that the past persecution suffered by Tadesse was not severe enough to warrant a grant of asylum based on humanitarian grounds. Substantial evidence supports that conclusion. See Matter of B-, 1995 WL 326740; Chen, 20 I. & N. Dec. at 19-20.

4

V.

Finally, substantial evidence supports the BIA's determination that Tadesse did not show a well-founded fear of future persecution based on family membership, political opinion, or her Amhara ethnicity. The record reveals that Tadesse's father, not his family members, has been harassed by the Tigrean government. Any harassment which Tadesse or other family members experienced during searches of Tadesse's father's home was due to their presence in the home and not due to their family membership or any political opinion imputed to them by virtue of their relationship to their father. See Chen Zhou Chai v. Carroll, 48 F.3d 1331, 1342-43 (4th Cir. 1995) (noting that to qualify as refugee on basis of political persecution, applicant must demonstrate that she is being persecuted for political opinion). On the contrary, there was no evidence to show that once Tadesse's siblings moved out of their father's home they were persecuted in any way due to their family relationship. Likewise, Tadesse offers no evidence that she has a well-founded fear of persecution based on her Amhara ethnicity. The record shows that the Tigrean government is not targeting Amharas for mistreatment and that many high-ranking government officials are Amharas.

The standard for withholding deportation is more stringent than that for granting asylum. See 8 U.S.C. § 1253(h) (1994); INS v. Cardoza-Fonseca, 480 U.S. 421, 430-32 (1987); Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991). Because Tadesse has not established entitlement to asylum, she cannot meet the higher standard for withholding deportation.

We accordingly deny the petition for review. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

PETITION DENIED

5