**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

YIGESGISU NEGASH,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 97-2743

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A74-286-993)

Submitted: May 12, 1998

Decided: June 16, 1998

Before MURNAGHAN and WILLIAMS, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William H. Rhodes, Arlington, Virginia, for Petitioner. Frank W.
Hunger, Assistant Attorney General, Karen Fletcher Torstenson,
Assistant Director, Gretchen M. Wolfinger, Office of Immigration
Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Wash-
ington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Yigesgisu Negash petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation and her motion to remand. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C. § 1158(a) (1994). The Act defines a refugee as a person unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1994); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane. See id.; Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989).

2

We must uphold the Board's determination that Negash is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994).[1] We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Negash] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Negash, who entered the United States with a nonimmigrant visa in February 1995, disagrees with the Board's finding that she failed to qualify for asylum and withholding of deportation. After a thorough review of the administrative record, we conclude that substantial evidence supports the Board's finding that Negash did not satisfy her statutory burden.

Evidence established that Negash, a native and citizen of Ethiopia, was an accountant and auditor for the government-run Ethiopian Airlines. In April 1992, Negash joined the All Amhara People's Organization (AAPO), an organization founded to protest the mistreatment of ethnic Amharas. As a member of AAPO, Negash participated in four demonstrations, the last in March 1994 and comprised of approximately 600 people. Negash testified that she traveled frequently on business to the neighboring country of Djibouti where she met secretly with Amhara exiles. Negash stated that she briefed the exiles, gave them documents prepared by the AAPO regarding the treatment of Amharas in Ethiopia, and brought the exiles' contributions to the AAPO back to Ethiopia.

Negash further testified that her husband was on the executive committee of the local branch of the AAPO. He was picked up by government forces on numerous occasions, questioned, and released.

_____

[1] We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform Immigrant Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

In March 1994, however, Negash's husband was picked up at his place of business and never returned. Negash reported his disappearance to the four local police stations, called their friends, and went searching for him. She also contacted his relatives and business customers, and reported his disappearance to the AAPO.

Negash stated at the hearing that she was detained by the police from October 15 to November 11, 1994. She was questioned about the AAPO and the people she met with when she went to Djibouti. Negash testified that she was tortured during the detention on at least four occasions when she was beaten with a plastic stick and kicked for about forty-five minutes. After her release, Negash received outpatient treatment at a hospital for a gynecological problem resulting from the beatings. She showed scars on her hands and arms to the immigration judge at the hearing. Upon release, Negash was required to sign a letter stating that she would appear before authorities for questioning upon request.

After returning to work on November 22, 1994, Negash traveled to Djibouti four or five times until February 7, 1995, when she was asked to return for questioning. Negash appeared as instructed and was questioned and released. As a result, she decided to leave the country and came to the United States on February 17, 1995, when she was scheduled to be in Djibouti on business. Since her arrival in the United States, Negash has received letters from friends telling her that they have not heard from her husband and that people are still coming to her former home and asking about her.

Negash takes issue with the IJ and Board's negative credibility finding, contending that she suffered past persecution and has a well-founded fear of persecution in Ethiopia. She maintains that she demonstrated a pattern of persecution by the Ethiopian government targeting similarly situated individuals of the Amhara ethnic group who are members of the AAPO.

As a threshold matter, our review is limited to the decision of the Board, not that of the IJ. See Huaman-Cornelio , 979 F.2d at 999. We find that substantial evidence supports the Board's finding that Negash's claim lacked credibility and that she was therefore ineligible for the requested relief. As noted by the Board, Negash's testimony

4

was vague and lacking in detail. Negash provided very little information about the AAPO or her husband's position with the group. She offered no details concerning his alleged detentions. Moreover, Negash failed to provide any documentation of her membership in the AAPO prior to her arrival in the United States, and her documentation of her detention in 1994 was not authenticated.

Negash also did not provide documentation of her medical treatment in the hospital after the detention. Nor did she submit documents confirming her husband's disappearance, although she testified that the AAPO would document the disappearance of a member picked up by government forces.[2] Although Negash testified that she was in too much of a rush to obtain the documentation when she left Ethiopia, the Board noted that Negash brought other documentation with her and had time to properly obtain a nonimmigrant visa to travel to the United States. Further, the Board found it inherently improbable that Negash would have been permitted to continue her employment with the government-owned airline and travel abroad if she were considered a political opponent suspected of engaging in subversive activities while abroad on business. These observations support the Board's finding that while Negash may have suffered some injury in the past, she failed to make a credible case for asylum.

Finally, Negash insists she qualified for withholding of deportation. The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421,

_____

[2] In a motion to remand before the Board, Negash submitted an unauthenticated document from a police station in Dire Dawa confirming that she reported her husband missing in March 1994. She also submitted a letter from a doctor in the United States noting residual marks on Negash's body related to abuse suffered in Ethiopia and a letter from a friend who wrote that Negash's husband had been seen in a prison cell. The Board refused to remand the matter because Negash failed to show the documents could not have been discovered or presented at her hearing. In any event, the Board noted that the proffered documents would not affect its decision, since the letter from the friend was similar to others mentioned by Negash at the hearing and because the document from the police station was unauthenticated. In addition, the Board noted that the doctor's conclusion about the origins of Negash's scars appears to have come from information provided by Negash.

5

431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. Because substantial evidence supports the Board's finding that Negash is ineligible for asylum, she cannot meet the higher standard for withholding of deportation.

We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6