**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROSA EVELYN HUEZO,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 97-2783

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A73-737-267)

Submitted: June 9, 1998

Decided: June 30, 1998

Before ERVIN, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Donald L. Schlemmer, Washington, D.C., for Petitioner. Frank W.
Hunger, Assistant Attorney General, Karen Fletcher Torstenson,
Assistant Director, Francis W. Fraser, Office of Immigration Litiga-
tion, UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Rosa Evelyn Huezo petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. 8 U.S.C. § 1158(a) (1994). The Act defines a refugee as a person unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1994); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

A finding of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1) (1997). This presumption may be rebutted by evidence demonstrating that there is no longer a reasonable fear of future persecution, such as when conditions in an alien's native country have changed significantly. See 8 C.F.R. § 208.13(b)(2) (1997).

2

Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane. Id. ; see Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989).

We must uphold the Board's determination that Huezo is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994).* We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by[Huezo] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Huezo, who entered the United States without inspection in October 1993, disagrees with the Board's finding that she failed to establish past persecution or a well-founded fear of future persecution in her home country based on her political opinion or social group. Our review reveals, however, that substantial evidence supports the Board's finding that Huezo did not satisfy her statutory burden.

Evidence established that Huezo, a native and citizen of El Salvador, joined the National Republican Alliance Party (ARENA) in 1990 when she was eighteen years old. Huezo's parents were long-time supporters of the ARENA party. Huezo and her parents promoted that party and its candidates, organized rallies, and recruited new members. As an unpaid volunteer, Huezo worked for ARENA two or three hours a day, two days a week. Huezo testified that her parents were more deeply involved with ARENA than she was.

_____

*We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform Immigrant Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

3

In 1990, a group known as the Farabundo Marti Front for National Liberation (FMLN) began threatening to kill Huezo and her parents because of their political activities with ARENA. In May 1991, a group Huezo believed to be members of the FMLN came to Huezo's house after she and her mother had returned from an ARENA political rally. Huezo hid behind a stack of boards in the living room. Unaware that Huezo was home, the group killed her mother with firearms and knives, telling her that they were killing her because she was an ARENA activist. Despite this incident, Huezo continued with her ARENA activities. In June 1992, Huezo's father was murdered two blocks from their house. A note left with the body stated that the FMLN was responsible for his death and threatened the lives of the rest of the family. After her father's death, Huezo remained active in ARENA and carefully avoided the FMLN. Huezo continued to hear, through others, of death threats against her, and ultimately left El Salvador in August 1993.

Citing the threats to her life and murders of her parents, Huezo maintains that the Board erred in finding that she failed to demonstrate past persecution and a well-founded fear of future persecution on account of her political opinion or membership in a particular social group. She contends that she established her eligibility for relief and that the Board abused its discretion in denying her asylum. We conclude, however, that substantial evidence supports the Board's finding that Huezo failed to show past persecution because the evidence did not adequately show that the harm suffered by her parents was intended to persecute Huezo for her political activities. As noted by the Board, the people who killed Huezo's mother did not know she was home when the murder took place. Moreover, the evidence strongly suggested that Huezo's parents were murdered because of their own long-term political activism and not because of Huezo's shorter term and less active support of ARENA.

We also find that Huezo could not show a well-founded fear of future persecution because of changes in country conditions in El Salvador. According to the State Department country report in the record, the demobilization of the last guerrilla combat units in December 1992 brought to a successful conclusion the demilitarization phase of the 1992 United Nations peace accords. As the Board mentioned, the ARENA party is now the ruling party as it was at the

4

time Huezo's parents were killed. According to the report, the FMLN emerged as a major opposition party at the last election. The report further notes that because FMLN ex-combatants tend to be concentrated in the areas where they were most active during the war, the option of relocation is available to those who were threatened or harassed by former guerrillas.

Huezo also maintains that the Board violated her right to due process, contending that the Board failed to present reasons for its conclusions and did not consider current political and human rights problems in El Salvador. This claim is without merit because the Board adequately explained its reasoning, noting that Huezo did not present enough evidence of current country conditions in El Salvador to support her claim that she remains a target of persecution because of her past support of the ARENA party.

The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. As Huezo has not established entitlement to asylum, she cannot meet the higher standard for withholding of deportation.

We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5