**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ABEBAYE ARAGIE,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 98-1560

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A74-290-642)

Submitted: October 30, 1998

Decided: November 17, 1998

Before MURNAGHAN, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William H. Rhodes, Arlington, Virginia, for Petitioner. Frank W.
Hunger, Assistant Attorney General, Kristen A. Giuffreda, Senior Lit-
igation Counsel, Margaret Perry, Office of Immigration Litigation,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Abebaye Aragie petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C.A. § 1158(a) (West Supp. 1998). The Act defines a refugee as a person unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992) (citation omitted); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

A finding of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1) (1998). This presumption may be rebutted by evidence demonstrating that there is no longer a reasonable fear of future persecution, such as when conditions in an alien's native country have changed significantly. See 8 C.F.R. § 208.13(b)(2) (1998).

2

Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" <u>Baka v. INS</u>, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting <u>Rivera-Cruz v. INS</u>, 948 F.2d 962, 969 (5th Cir. 1991)). To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane. <u>Id.</u> ; <u>see Matter of Chen</u>, 20 I. & N. Dec. 16 (BIA 1989).

We must uphold the Board's determination that Aragie is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994).* We accord the Board all possible deference. <u>See Huaman-Cornelio</u>, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by[Aragie] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." <u>INS v. Elias-Zacarias</u>, 502 U.S. 478, 481 (1992).

Aragie, who entered the United States in May 1995 as a visitor, disagrees with the Board's finding that she failed to establish past persecution or a well-founded fear of future persecution in her home country based on her political opinion or social group. Our review reveals, however, that substantial evidence supports the Board's finding that Aragie did not satisfy her statutory burden.

Evidence established that Aragie, a native and citizen of Ethiopia and an ethnic Amhara, was employed by the government-owned Commercial Bank of Ethiopia under the Mengistu government and the new government put in place by the Ethiopian People's Evolutionary Democratic Front (EPRDF) after it overthrew Mengistu in 1991. The Mengistu government, which was in power in Ethiopia for seventeen years, executed two of Aragie's brothers. Aragie testified that in 1978, the Mengistu government arrested her for distributing literature

_____

*We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

3

for an opposition party. During her six-month imprisonment, Aragie was kicked, beaten, and physically mistreated. In June 1991, one month after the overthrow of Mengistu, Aragie's husband was arrested by the new government and remains incarcerated. He was an employee of the Air Force under the Mengistu regime.

As a bank employee, Aragie rose to the position of chief auditor. In August 1992, she was elected to represent her branch in labor negotiations with the Bank. Because of their negotiation activities, Aragie and other union representatives were arrested. Aragie organized a five-day strike to protest the arrests. As a result, she and other representatives were suspended by the bank for one year. After she was reinstated as chief auditor at a new branch in September 1993, Aragie discovered an illegal banking scheme which she reported to her supervisor in May 1994. The supervisor ordered Aragie to withdraw her report and Aragie refused. The next day, Aragie was ordered transferred to another branch of the bank.

At the new branch, Aragie discovered what she believed was an illegal withdrawal and cancelled it. Aragie testified that the following day she was arrested by an EPRDF official and imprisoned for more than five months. While Aragie testified that she was arrested in June 1994, she also insisted that she continued to work at the bank until July 1994. During her incarceration, Aragie testified that she was verbally abused and questioned about her motive for cancelling the withdrawal. After her release, Aragie began supporting the All Amhara People's Organization (AAPO) and its chairman, Professor Asrat. In December 1994, she was arrested for protesting the professor's arrest and was jailed for three days. Upon her release, Aragie was warned not to participate in any political activities. She also claimed that her father was threatened and lost his business because of false accusations that he was providing financial support to the AAPO. A member of the Coalition of Ethiopian Democratic Forces (COEDF) since May 1994, Aragie has continued supporting the organization in the United States.

Aragie challenges the IJ's and the Board's findings that her account of imprisonment and political persecution by the current government of Ethiopia lacks credibility, contending that she suffered past persecution and has a well-founded fear of persecution in Ethiopia. As a

4

threshold matter, our review is limited to the decision of the Board. See Huaman-Cornelio, 979 F.2d at 999. We find that substantial evidence supports the Board's finding that Aragie's claim lacked credibility and that she was therefore ineligible for the requested relief.

In reviewing Aragie's claim, the Board found Aragie lacked credibility because her testimony contained material inconsistencies and discrepancies with her written statements regarding her claim of political persecution by the current Ethiopian government. For example, while Aragie testified she was imprisoned for more than five months in 1994, she told the asylum officer during her interview she was incarcerated for three months and wrote on her 1995 asylum application she was imprisoned for six months. The Board also cited Aragie's inconsistent testimony concerning when she stopped working at the bank and noted her failure to report in her asylum application that she was questioned by officials about her political affiliations during her 1994 incarceration. Considering these inconsistencies cited by the Board, we find substantial evidence supports its adverse credibility determination.

Aragie next contends that she demonstrated a pattern of persecution by the Ethiopian government targeting similarly situated individuals of the Amhara ethnic group who are opposed to the government and members of COEDF. See 8 C.F.R. § 208.13(b)(2). This claim is without merit because as the Service points out, the human rights reports in the record disclose that while AAPO members have been harassed and some leaders convicted and imprisoned on charges of secretly advocating violence against the government, it is not clear that this occurred because of their ethnicity as Amharas. In addition, while the Human Rights Watch report discusses numerous organizations whose members have been targeted for harassment, mistreatment and arrest, it does not discuss COEDF. Rather, the Amnesty International report mentions that one COEDF leader was imprisoned upon his return to Ethiopia and held for alleged crimes against humanity under the former government.

Finally, Aragie maintains that she is eligible for asylum because of past persecution she suffered during her imprisonment by the Mengistu regime. This claim is also meritless because assuming Aragie did indeed suffer persecution during that 1978 imprisonment, the

5

Mengistu regime has since been overthrown and is no longer a threat to Aragie.

Because Aragie has not established eligibility for asylum, she cannot meet the higher standard for withholding of deportation. See INS v. Cardoza-Fonseca, 480 U.S. 421, 430-32 (1987). We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6