**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KHALED MOHAMED BASMA,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 97-2221

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A72-374-621)

Submitted: May 29, 1998

Decided: June 29, 1998

Before MURNAGHAN and MICHAEL, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Richard S. Fishbein, JOHN O'LEARY & ASSOCIATES, Washing-
ton, D.C., for Petitioner. Frank W. Hunger, Assistant Attorney Gen-
eral, Richard M. Evans, Assistant Director, Ellen Sue Shapiro, Office
of Immigration Litigation, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Khaled Mohamed Basma petitions for review of a final order of the Board of Immigration Appeals ("the Board") denying his application for asylum and withholding of deportation but granting voluntary departure. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C. § 1158(a) (1994). The Act defines a refugee as a person unwilling or unable to return to his native country"`because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc) (quoting 8 U.S.C. § 1101(a)(42)(A) (1994)).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992) (quoting Blanco v. Comarribas v. INS, 830 F.2d 1039, 1042 (9th Cir. 1987)); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

"Eligibility for asylum can [also] be based on grounds of past persecution alone even though there is `no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). "To

2

establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane." Baka, 963 F.2d at 1379; see Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989).

We must uphold the Board's determination that Basma is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994).* We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by[Basma] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Basma, who entered the United States as a nonimmigrant visitor in February 1992, disagrees with the Board's finding that he failed to qualify for asylum because of past persecution and his fear of future persecution on account of his nationality and membership in a particular social group. Our review reveals, however, that substantial evidence supports the Board's finding that Basma did not satisfy his statutory burden.

Evidence established that Basma is a native of Sierra Leone and lived there until he entered the United States in 1992. Basma testified at the hearing that in 1991, while he was overseeing his cousin's diamond shop in Kono, rebels entered the shop, beat him, and called him derogatory names in an attempt to steal the money and the diamonds in the store. Basma testified that the rebels commented that they were looting all of the shops, houses, and diamond dealers because they were owned by the Lebanese, who were wealthy. Basma escaped while the rebels were looting the store. Basma's relative, who also owned a diamond shop, was beaten and shot by the rebels. According to Basma, the Lebanese in Sierra Leone are the wealthiest people and,

_____

*We note that 8 U.S.C. § 1105a(a)(4) (1994) was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time IIRIRA was passed, 8 U.S.C. § 1105(a)(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of IIRIRA.

3

because of their wealth, they are disliked by the rebels, who are Liberians.

Basma further testified that his own automotive shop was looted. Initially, Basma stated that the rebels came to his store in 1990, but during cross-examination, he stated that government soldiers came to his store in September or October 1991. He stated that he was struck in the face three or four times with the butt of a gun, called racial epithets, and robbed of the money and property in the store. In addition, he testified that his house was broken into and looted by soldiers approximately two weeks before he left for the United States.

Basma testified that two of his relatives were beaten because they refused to clean the street when ordered to do so by the soldiers. Basma initially testified that only Lebanese were beaten and killed, but he later testified that black Africans also suffered harm during the civil conflict.

In support of his testimony, Basma submitted copies of newspaper articles and a copy of an Amnesty International Report documenting the civil conflict between the rebel forces and the government soldiers that erupted in Sierra Leone in 1991. The report disclosed that unarmed civilians had been captured, tortured, held hostage, and killed. The report further stated that both the government soldiers and the rebel forces have been implicated in the atrocities perpetrated on the civilian population. The report stated that the motives of those involved in the conflict were not clear, but the conflict has developed into a campaign aimed primarily at civilians.

We find that substantial evidence supports the Board's conclusion that Basma lacked an objective basis to fear persecution. The Board's decision was based, in part, on its finding that Basma is a citizen of Lebanon, and he has not presented evidence to demonstrate that he was a victim of past persecution or that he has a well-founded fear of persecution based on one of the factors articulated by the Act. Although Basma attempted to dispute that he is a citizen of Lebanon, the order to show cause, which Basma, through counsel, admitted was true, stated that he was a citizen of Lebanon. Further, Basma stated in his asylum application that his nationality was Lebanese. Basma admitted that his parents are Lebanese citizens and that his own passport is from Lebanon. Even though Basma stated that he did not know anyone in Lebanon, he later conceded that his entire family has

4

resided in Lebanon for more than eight years. Basma's expression of hesitation to return to Lebanon was based primarily on the country's general condition of violence and upheaval, which is insufficient to qualify for asylum. See M.A., 899 F.2d at 314-15.

Substantial evidence also supports the Board's finding that Basma does not have a well-founded fear of persecution due to his status as a wealthy Lebanese if returned to Sierra Leone. Persecution based on wealth is not a ground protected under the Act. See Li v. INS, 92 F.3d 985, 987 (9th Cir. 1996). Financial status is not an immutable characteristic or trait that is so fundamental to an individual's identity that the individual ought not be required to change. See Gebremichael v. INS, 10 F.3d 28, 36 (1st Cir. 1993) (quoting Matter of Acosta, 19 I. & N. Dec. 211, 235 (BIA 1985)). The record does not show that Basma was targeted based on his financial status or his ethnicity. Although the record reveals that Basma was physically harmed, it appears that Basma was merely a victim of the soldiers' and rebels' looting of wealthy citizens. Basma's testimony and documentary evidence reveal that the atrocities have not only been perpetrated on Lebanese citizens but against other citizens as well. Basma's fear is grounded in conditions that affect Sierra Leone as a whole and are insufficient to qualify for asylum. Our review of the record discloses substantial evidence that, even if Basma suffered past persecution, it was not severe enough to warrant a grant of asylum on humanitarian grounds.

The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. Because substantial evidence supports the Board's finding that Basma is ineligible for asylum, he cannot meet the higher standard for withholding of deportation.

We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED