**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ETENESH WORKU HAILESELASIE,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 98-1210

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A74-672-506)

Submitted: July 28, 1998

Decided: August 11, 1998

Before HAMILTON, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Onyebuchi N. Enechionyia, Arlington, Virginia, for Petitioner. Frank
W. Hunger, Assistant Attorney General, Mark C. Walters, Assistant
Director, Kathryn M. McKinney, Office of Immigration Litigation,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Etenesh Worku Hailesalasie petitions for review of a final order of the Board of Immigration Appeals ("Board") dismissing her appeal and affirming the Immigration Judge's ("IJ's") decision denying her application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

Hailesalasie is a native and citizen of Ethiopia who entered the United States as a non-immigrant visitor for pleasure in August 1995, with permission to stay until February 1996. She conceded deportability but asserted that she was eligible for asylum and withholding of deportation because she had a well-founded fear of persecution if she returned to Ethiopia. Hailesalasie testified that both she and her husband, who currently resides in Ethiopia along with four of Hailesalasie's eight children, are members and financial contributors of the All Amhara People's Organization ("AAPO"), which opposes the current governmental regime. She testified that she had been arrested and tortured many times and that her uncle, brother, and brother-in-law were all killed because they are ethnic Amharas. She also stated that her husband was arrested and spent time in a military camp and that she was arrested on April 15, 1994. She claimed that she was beaten, questioned about the AAPO activities, and released on April 5, 1995.

The IJ denied Hailesalasie's request for asylum and withholding of deportation, finding that her evidence of past persecution was incredible. Adopting the reasoning of the IJ, the Board dismissed Hailesalasie's appeal. She filed a timely petition for review.

The Immigration and Nationality Act ("the Act") authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C.A. § 1158(a) (West Supp. 1998). The Act defines a refugee as a person unwilling or unable to return to her native country

2

"because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A.§ 1101(a)(42)(A) (West Supp. 1998); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. The subjective element is satisfied by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992). Eligibility for asylum can also be based on past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane. See id. Further, to qualify for withholding of deportation, a standard much more stringent than that for granting asylum, an applicant must demonstrate "a clear probability of persecution." INS v. Cardoza-Fonseca, 480 U.S. 421, 430-32 (1987).

We will uphold the Board's determination that Hailesalasie is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994).* We accord the Board all possible deference, Huaman-Cornelio, 979 F.2d at 999, and will reverse the Board's decision "only if the evidence presented by [Hailesalasie] was such that a reasonable factfinder would have to conclude that the

_____

*We note that 8 U.S.C. § 1105a(a)(4), was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 ("IIRIRA"), effective April 1, 1997. Because the case was in transition at the time the IIRIRA was passed, § 1105a(a)(4), is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

3

requisite fear of persecution existed." <u>INS v. Elias-Zacarias</u>, 502 U.S. 478, 481 (1992).

We conclude that substantial evidence supports the Board's finding that Hailesalasie did not present credible evidence establishing that she suffered past persecution in Ethiopia. The IJ found, and the Board agreed, that there were significant discrepancies in Hailesalasie's testimony and her documentary evidence. For example, Hailesalasie contends that she was imprisoned for one year from April 15, 1994, to April 5, 1995. To support this claim, she submitted a document on the AAPO's stationery which states that she was detained from April 25, 1994 to April 25, 1995. The letter does not explain the source of the information. Hailesalasie's passport, however, contains a stamp showing that the passport was issued on April 13, 1994, two days before the alleged incarceration. Even though she was allegedly imprisoned on April 15, 1994, the passport indicates that she obtained Ethiopian exit visas on April 22, 1994, and on April 25, 1994. Further, Hailesalasie obtained a United States nonimmigrant visa on April 11, 1995, fourteen days before she was allegedly released from prison per the AAPO letter on April 25, 1995.

When confronted with the discrepancies, Hailesalasie responded that the AAPO's letter contained the incorrect dates of her incarceration. However, she submitted the letter in order to meet the deadline for filing her asylum application. She then proffered another letter on AAPO stationery which corroborated the dates Hailesalasie contends she was incarcerated. The letter, however, did not state the source of the information. Further, the fact that Hailesalasie could merely request another letter with different information, without explaining the source of the information, calls the reliability of the letter into question.

The IJ also noted several other discrepancies in Hailesalasie's testimony. For example, to prove her age, Hailesalasie presented a marriage certificate; however, the certificate contained unexplained, handwritten alterations to her date of birth. Hailesalasie also claimed that after being released from prison in April 1995, she returned to her job and worked for another six weeks; however, it was her employer who originally arranged for her to be arrested for participation in the AAPO. Finally, even though Hailesalasie and her husband have alleg-

4

edly encountered serious conflicts with the government, four of her children are permitted to attend public institutions of higher learning, and a fifth child is permitted to work for Ethiopian Airlines.

In light of the discrepancies in her testimony and documentary evidence, we find that substantial evidence supports the Board's finding that Hailesalasie did not present credible evidence establishing that she suffered past persecution in Ethiopia. See Berroteran-Melendez, 955 F.2d at 1256. In addition, she presented no credible evidence that she faces a clear probability of persecution. Accordingly, the Board properly concluded that Hailesalasie does not qualify for withholding of deportation. See Cardoza-Fonseca, 480 U.S. at 430-32. Therefore, we affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5