**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TESFAYE SETARGIE; NIGIST ASSEFA;
EMANUEL TESFAYE,
Petitioners,

v.                                                              No. 98-1536

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-509-0601, A72-372-485, A72-415-956)

Submitted: August 25, 1998

Decided: September 16, 1998

Before ERVIN and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Mikre Michael Ayele, Arlington, Virginia, for Petitioners. Frank W.
Hunger, Assistant Attorney General, Brenda E. Ellison, Senior Litiga-
tion Counsel, John C. Cunningham, Office of Immigration Litigation,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Tesfaye Setargie, a native and citizen of Ethiopia, petitions for review of a final order of the Board of Immigration Appeals (the "Board") denying his application for asylum and withholding of deportation. Setargie's wife, Nigist Assefa, and their son, Emanuel Tesfaye, also natives and citizens of Ethiopia, appear as co-petitioners. They were listed as dependents on Setargie's application for asylum and are subject to the same final order of deportation entered by the Board. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (the "Act") authorizes the Attorney General, in her discretion, to confer asylum on any refugee. 8 U.S.C.A. § 1158(b) (West Supp. 1998). The Act defines a refugee as a person unwilling or unable to return to his native country "be-cause of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (en banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testi-mony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992) (quoting Blanco-Comarribas v. INS, 830 F.2d 1039, 1042 (9th Cir. 1987)); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective ele-ment requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

2

A finding of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1) (1998). This presumption may be rebutted by evidence demonstrating that there is no longer a reasonable fear of future persecution, such as when conditions in an alien's native country have changed significantly. See 8 C.F.R. § 208.13(b)(1) (1998). "Eligibility for asylum can [also] be based on grounds of past persecution alone even though there is `no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). "To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane." Id.; see Matter of Chen , 20 I. & N. Dec. 16 (BIA 1989).

We must uphold the Board's determination that Setargie is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C.A. § 1105a(a)(4) (West Supp. 1998). We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Setargie] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Setargie contends that the Board erred by finding that he failed to show that he suffered from past persecution and by requiring him to show a well-founded fear of persecution. Setargie insists that he was the victim of a history of past persecution due to his religious beliefs and, based on that showing, was not required to show a well-founded fear of persecution. Setargie also contends that he has a well-founded fear of future persecution due to his religious beliefs, political opposition to Ethiopia's current government, and his Amharan ethnicity. Our review reveals, however, that substantial evidence supports the Board's finding that Setargie did not satisfy his statutory burden.

Evidence established that Setargie was an accountant employed by the Ethiopian Electric Light and Power Company, a government agency, from 1975 until he voluntarily quit in 1990. Setargie also served the Meseret Kristos Pentecostal Church as an elder, teacher and preacher. During this period, Ethiopia was ruled by the Marxist

3

regime of Colonel Mengistu. Setargie contended that members of his church were jailed in 1981 and property was confiscated. Church members were forced to meet secretly for worship. Setargie was jailed in 1983 for thirty-three days because he was one of the leaders of the underground movement. He was also threatened by his supervisor, one time with a gun, and co-workers, because of his religious activity. In 1988, Setargie was permitted to leave Ethiopia for six weeks to attend a religious conference in Singapore. When he returned, he was suspended from his government job for two months. At the urging of his manager, he was reinstated. In 1990, he received a notice from the government instructing him to report for military duty. He quit his job, obtained a passport from the government, and came to the United States. In 1991, the Mengistu regime was overthrown by the Ethiopian People's Revolutionary Democratic Front. In 1992, his wife and child joined Setargie in the United States.

The immigration judge ("IJ") found that Setargie did not show a sufficient level of past persecution or a well-founded fear of future persecution based on his religious or political beliefs or his ethnicity. On appeal, the Board concluded that the IJ applied the correct legal standard. The Board noted that Setargie failed to provide details concerning his 1983 jail term and that he remained employed by the government despite his religious activity. The Board also noted that Setargie failed to present any objective evidence supporting his claim that he would face persecution due to his religion if he were to return to Ethiopia. In addition, the Board found that Setargie failed to present any evidence supporting his claim that he would face persecution based upon his political beliefs or ethnicity.

We conclude that substantial evidence supports the Board's finding that Setargie failed to show past persecution. Persecution is the infliction of suffering or harm upon those who differ due to a protected status in a way regarded as offensive. See Prasad v. INS, 47 F.3d 336, 339 (9th Cir. 1995). It includes non-life threatening violence and abuse. But not every "bullying" tactic by government agents rises to the level of persecution. See Marquez v. INS, 105 F.3d 374, 379-80 (7th Cir. 1997). The evidence showed that Setargie was jailed only once over a period of many years and remained employed by a government agency with knowledge that Setargie was active in his religious group. He was permitted to leave the country in order to further

4

his religious education. Neither he nor his family suffered any physical abuse or severe economic sanctions. Furthermore, Setargie cannot base his claim of asylum on the Ethiopian government's attempt to draft him into the military. See M.A., 899 F.2d at 312.

Setargie's argument that the Board applied the wrong legal standard is dependent upon a finding that Setargie suffered past persecution. Setargie misreads the Board's decision. The Board clearly stated that Setargie failed to show that he was persecuted due to his religion. (A.R. at 4).

We also find substantial evidence supports the Board's finding that Setargie does not have a well-founded fear of future persecution if he were to return to Ethiopia. There is no evidence that he faces persecution due to his religious beliefs. The new constitution includes a provision granting religious freedom. Setargie bases his fear due to his political beliefs on two conversations he had with Ethiopian government authorities here in the United States, in addition to the assertion that the current government is Marxist. He contends that his opposition to some of the government's current policies, expressed to the government authorities, would make him a target for persecution were he to return. Prior to coming to the United States, Setargie was not active in any political movement. There is nothing in the record suggesting that he faces persecution due to these conversations. The State Department has reported that Ethiopian citizens have greater political freedom than at any time in the nation's history. (A.R. at 251). Finally, there is no evidence to support Setargie's fear of persecution due to his ethnicity.

The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. As Setargie has not established entitlement to asylum, he cannot meet the higher standard for withholding of deportation. See Huaman-Cornelio, 979 F.2d at 1000.

We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately pre-

5

sented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6