**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TRUWORK HAILEMARIAM,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 98-1209

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-671-438)

Submitted: September 15, 1998

Decided: October 6, 1998

Before ERVIN, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William H. Rhodes, Arlington, Virginia, for Petitioner. Frank W.
Hunger, Assistant Attorney General, William J. Howard, Senior Liti-
gation Counsel, John M. McAdams, Jr., Office of Immigration Litiga-
tion, Civil Division, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Truwork Hailemariam petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C. § 1158(a) (1994). The Act defines a refugee as a person unwilling or unable to return to his native country "because of perse-cution or a well-founded fear of persecution on account of race, reli-gion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (1994); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testi-mony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a rea-sonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

A finding of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1) (1997). This presumption may be rebutted by evidence demonstrating that there is no longer a reasonable fear of future persecution, such as when conditions in an alien's native country have changed signifi-cantly. See 8 C.F.R. § 208.13(b)(2) (1997).

2

Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane. Id. ; see Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989).

We must uphold the Board's determination that Hailemariam is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994).* We accord the Board all possible deference. See Huaman-Corelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Hailemariam] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Hailemariam, who entered the United States as a non-immigrant visitor in March 1993, disagrees with the Board's finding that she lacked credibility and failed to establish past persecution or a well-founded fear of future persecution in her home country based on her political opinion or ethnicity. Our review reveals, however, that substantial evidence supports the Board's finding that Hailemariam did not satisfy her statutory burden.

Evidence established that Hailemariam, an Ethiopian native of Amhara ethnicity, joined the Ethiopian People's Revolutionary Party (EPRP) in 1975 and worked exclusively as a recruiter. The EPRP opposed the Mengistu regime, the government in power at that time. Hailemariam testified that she was arrested and detained for forty-five days in 1977 because of her political affiliation. Hailemariam further testified that she was arrested and detained for six months in 1979 by

_____

*We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform Immigrant Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

Mengistu authorities for distributing EPRP papers in the marketplace and questioned about the papers she was distributing. She then testified that during the questioning she was pushed, beaten, called names, and raped. As a result of the rape, she was hospitalized for two days and then released to her family.

In May 1991, the Eritrean People's Liberation Front (EPLF) and the Tigrean People's Liberation Front (TPLF) ousted the Mengistu government from power and formed a new government, the Ethiopian Peoples Revolutionary Democratic Front (EPRDF). Hailemariam claimed that the EPRDF divided Ethiopia along ethnic lines and targeted the Amharas for harassment and persecution.

She testified that people from the EPRDF would call her and ask her questions about her brother's activities in the All Amhara People's Organization (AAPO), a group formed to speak out against the present government and to advocate the rights of the Amharas. While her husband was incarcerated because he was a member of the Workers' Party of Ethiopia (WPE), the EPRDF asked her for the names of other EPRP and AAPO members and where her husband had hidden money, documents, and firearms. Hailemariam testified that on one occasion EPRDF officials came into her home looking for weapons and that when they did not find anything they became abusive and stabbed her in the leg. Following this incident, she was hospitalized for about three days. Once she was released from the hospital and returned home, members of the EPRDF continued to come and search her home and harass her. Based on these experiences, Hailemariam decided to flee Ethiopia.

Hailemariam maintains that the Board erred in finding that her claim regarding fear of persecution by the EPRDF lacks credibility and incorrectly found that she did not suffer past persecution at the hands of the former and current governments. We conclude that substantial evidence supports the Board's finding that Hailemariam's claim that she fears persecution by ERPDF lacks credibility.

As noted by the Board, Hailemariam gave inconsistent or confusing details of events relevant to her petition. She made no reference in her asylum claim or her supplemental affidavit to her forty-five day detention around 1977 by the Mengistu regime. Hailemariam also tes-

4

tified that in 1991, members of the EPRDF stabbed her in the leg and that she was in the hospital for three or four days. In contrast, in her affidavit she claimed that she was hospitalized for nearly three months. Nor did Hailemariam present any medical documentation concerning this injury.

Hailemariam further claimed that her father was killed by the Mengistu regime. However, she made no mention of this in her asylum application and only noted that he had been arrested and mistreated. The Board also pointed out that Hailemariam offered no details about her husband's position with the EWP. Hailemariam testified that her husband was a teacher who was forced to join the EWP, but in her asylum application she stated that her husband was a very active member. She further noted that her husband was imprisoned in 1991 but there was no documentation of this fact. More importantly though, Hailemariam described herself as an active member of the AAPO, however, she was unable to provide any information about the nature or operations of the AAPO or any documentation of her membership. Finally, Hailemariam was able to obtain an exit visa and leave Ethiopia without any problems.

These omissions and discrepancies implicate the core of Hailemariam's claim of past persecution and fear of persecution by the current government of Ethiopia and support the Board's finding that Hailemariam's claim lacks credibility. In light of Hailemariam's nonspecific, inconsistent, and undocumented testimony regarding the harm she allegedly suffered and her fear of continued persecution, we conclude that evidence supports the Board's negative credibility finding and that the Board properly found that she could not support a claim for past persecution. We further conclude that substantial evidence supports the Board's finding that Hailemariam could not show a well-founded fear of persecution.

The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. As Hailemariam has not established entitlement to asylum, she cannot meet the higher standard for withholding of deportation.

5

We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

6