**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ELIAS MUSSIE,
<u>Petitioner,</u>

v.

No. 98-1926

U.S. IMMIGRATION &
NATURALIZATION SERVICE,
<u>Respondent.</u>

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A72-416-860)

Submitted: December 8, 1998

Decided: January 11, 1999

Before WILKINS and MOTZ, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Onyebuchi N. Enechionyia, Arlington, Virginia, for Petitioner. Frank
W. Hunger, Assistant Attorney General, Mark C. Walters, Assistant
Director, Teresa A. Wallbaum, Office of Immigration Litigation,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Elias Mussie petitions for review of a final order of the Board of Immigration Appeals (Board) denying his application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C.A. § 1158(b)(1) (West Supp. 1998). The Act defines a refugee as a person unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (en banc). The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see generally Figeroa v. INS, 886 F.2d 76, 78-79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992). Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). "To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane." Id.; see Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989).

We must uphold the Board's determination that Mussie is not eligi-

2

ble for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (West Supp. 1998).* We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Mussie] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Mussie disagrees with the Board's finding that he failed to establish past persecution or a well-founded fear of future persecution in his home country based on his political opinion. Our review reveals, however, that substantial evidence supports the Board's finding that Mussie did not satisfy his statutory burden. Evidence established that Mussie, a native and citizen of Ethiopia, lived in Addis Ababa, Ethiopia, with his parents and two siblings and he worked as an engineer for a company owned by the government. Prior to May 1991, when the communist government was in power, members of Mussie's family were arrested and beaten. Mussie stayed at the homes of various friends to avoid arrest. The communist government was overthrown in 1991, and the new government was led by the Ethiopian People's Revolutionary Democratic Front.

Mussie testified that in July 1991 he decided to join the Coalition of Ethiopian Democratic Forces ("COEDF"). Mussie's uncle, Iyasou Beyene, who resided in the United States, was a leader of the COEDF. Mussie testified that while in Ethiopia, he helped to organize peaceful demonstrations and to pass out literature for the COEDF, leading a cell of six COEDF members. In 1992, Mussie left Ethiopia for the United States on a visitor's visa. He joined his uncle, who lived in Washington, D.C. While in the United States, Mussie maintained ties to the COEDF, doing what he characterized as office work and helping to organize peaceful demonstrations in the United States.

---

*We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

In 1993, Mussie learned that two members of his COEDF cell and his COEDF superior in Ethiopia had been arrested, and members of his family told him that agents of the Ethiopian government had visited the family home to learn Mussie's whereabouts. Mussie contends that his membership in the COEDF is what led to the government's interest in him, and that if he returns to Ethiopia he will be persecuted.

The immigration judge (IJ) found that Mussie's claims were not credible because of inconsistencies in his testimony, and the Board adopted that finding. For example, Mussie claimed that his work in the COEDF put him at odds with the government. However, he had a job in a government owned company, got an exit visa and passport from the government, and never personally experienced any difficulties with the government. Further, he admitted that when he left Ethiopia on a visitor's visa, he had no intention of returning to Ethiopia, and he did not deny that he intended to seek asylum when he entered the United States. He also testified, however, that he knew he could not seek refugee status after he left Ethiopia. In addition, although he claimed that several of his fellow COEDF members were arrested at different times, he offered no evidence that the arrests were related to their political activities. Although Mussie claimed he would be at risk because of his COEDF membership if he returned to Ethiopia, he admitted that his family has suffered no harm. Finally, there was confusion regarding when Mussie joined the COEDF. He testified that he became a member in July 1991, two or three months after the organization was founded. He also testified, however, that the organization was founded in Canada at the end of 1991. He contends on appeal that the discrepancy in dates is due to the fact that the Ethiopian calendar is different that the Gregorian calendar, but even this explanation is less than clear--he testified before the IJ that the Ethiopian calendar year begins in September, and ends in June and July.

We conclude that substantial evidence supports the Board's finding that Mussie's account lacked credibility and that there was insufficient evidence in the record to support his claim. The IJ stated that he had some doubts about Mussie's involvement in the COEDF, and noted that in any event, the State Department report on Ethiopia reflects that the government is tolerant of former COEDF members and those COEDF members who renounce violence; Mussie testified

4

that he did not support violent overthrow of the government. These findings constitute substantial evidence to support the Board's denial of asylum.

The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987). To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution." Id. at 430. As Mussie has not established entitlement to asylum, he cannot meet the higher standard for withholding of deportation.

We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5