**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HAREGU GEBRU,
Petitioner,

v.

No. 98-1927

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-510-887)

Submitted: January 19, 1999

Decided: February 18, 1999

Before MURNAGHAN, WILKINS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Mikre Michael Ayele, Arlington, Virginia, for Petitioner. Frank W.
Hunger, Assistant Attorney General, Karen Fletcher Torstenson,
Assistant Director, Joan E. Smiley, Senior Litigation Counsel, Office
of Immigration Litigation, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Haregu Gebru petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C.A. § 1158(a) (West Supp. 1998). The Act defines a refugee as a person unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (en banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992) (citation omitted); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

A finding of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1) (1998). This presumption may be rebutted by evidence demonstrating that there is no longer a reasonable fear of future persecution, such as when conditions in an alien's native country have changed significantly. See 8 C.F.R. § 208.13(b)(2) (1998).

2

Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane. Id. ; see Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989).

We must uphold the Board's determination that Gebru is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994).* We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by[Gebru] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Gebru, who entered the United States in December 1990 as a visitor, disagrees with the Board's finding that she failed to qualify for a humanitarian grant of asylum based on past persecution and failed to establish a well-founded fear of persecution in Eritrea and Ethiopia due to her political opinion. Our review reveals, however, that substantial evidence supports the Board's finding that Gebru did not satisfy her statutory burden.

Evidence at the hearing established that Gebru, a native of Ethiopia and a citizen of Eritrea, worked in a hotel in Asmara. Now the capital city of Eritrea, Asmara was once the provincial capital for what was then a part of Ethiopia. In 1980, Gebru joined the Eritrean People's Liberation Front (EPLF). Active in employee activities at her hotel, Gebru eventually became the head of the hotel union. Because of her leadership role in the union, the Ethiopian Worker's Party (EWP), the

_____

*We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform Immigrant Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

3

party that supported the now defunct Communist regime in Ethiopia, summoned Gebru to its Asmara office in December 1985. The party official asked Gebru to join EWP. Gebru declined, claiming that she was too busy to join the party. The party official then communicated to Gebru that she might be considered a supporter of the EPLF if she refused to join EWP. Gebru was afraid because EPLF was in rebellion against the Communist regime. The party official permitted her to leave, but warned her she could be suspected of membership in the EPLF.

In January 1986, the party official summoned Gebru again to his office and she again declined to join the EWP. The next month, Gebru was arrested by Communist government agents and imprisoned for over four months. During her incarceration, Gebru was interrogated and was forced to view the corpses of executed prisoners. During two interrogations, Gebru was tied up and suspended on a stick. She was tortured with electric shocks, kicked, burned with cigarettes, and her head was periodically immersed in a barrel of dirty water in attempts to induce her to confess membership in EPLF. Despite this mistreatment, Gebru did not admit her EPLF membership.

After her release, Gebru was summoned to the Department of Investigation for interrogation several times in 1986, 1987, 1988, and 1989 for questioning. Gebru continued to deny support for the EPLF. After the civil war in Eritrea took a turn against the Communist regime in early 1990, Gebru and other suspected EPLF supporters were rearrested and incarcerated. Held for three months, Gebru was again tortured by her captors. Unable to withstand her mistreatment this time, Gebru revealed that she had been a member of the EPLF and provided names of two individuals she said were EPLF members. In fact, those individuals were not involved with the EPLF but Gebru named them to satisfy the demands of her captors. Gebru later refused to sign a written confession.

After her release, Gebru traveled to Addis Ababa to stay with her cousin. With her cousin's help, Gebru obtained an Ethiopian passport and a visitor's visa to come to the United States. Gebru testified at the hearing that she has come to oppose the EPLF, which now governs a free and independent Eritrea, and has not been an EPLF member since 1993. Since 1993, Gebru has associated herself with the Eritrean

4

Liberation Front, an opposition group active in Eritrea. She testified that the EPLF government does not respect human rights and she does not wish to return.

Gebru challenges the IJ's and Board's finding that although she suffered past persecution, it did not compare to the level of atrocious persecution suffered by the asylum applicant in Matter of Chen and thus did not merit a humanitarian grant of asylum based on past persecution alone. As the IJ noted in a lengthy and detailed opinion that was affirmed by the Board, the asylum applicant in Matter of Chen became physically debilitated due to years of mistreatment, had to wear a hearing aid for the rest of his life, and suffered psychological damage which made him suicidal. While Gebru undoubtedly suffered greatly as a result of the mistreatment she endured during her incarcerations, the IJ and Board noted she presented no evidence demonstrating that she suffers from physical and psychological disabilities like those shown in Matter of Chen. While we note that Gebru's mistreatment was serious and agree that she indeed suffered past persecution, we find that substantial evidence supports the IJ's and Board's finding that a grant of humanitarian asylum was not warranted.

We also find that substantial evidence supports the IJ's and Board's finding that Gebru failed to demonstrate a well-founded fear of persecution in Eritrea or Ethiopia because of changes in country conditions. Mengistu no longer rules Ethiopia, and Eritrea is now an independent nation governed by the same organization Gebru supported for almost thirteen years. As the IJ noted, the human rights situation in both Ethiopia and Eritrea has greatly improved since the overthrow of Mengistu, and evidence in the record, particularly the State Department country reports, does not support a finding that members of the Eritrean Liberation Front are targeted for persecution in Eritrea or Ethiopia.

Finally, Gebru contends that the Board used the wrong standard of law and evidence and abused its discretion in denying her asylum. We find the Board properly cited and applied the law. Gebru's contention that the Board abused its discretion is misplaced because the Board found her ineligible for relief and did not reach the question of whether she merited a grant of asylum in the exercise of discretion.

5

Because Gebru has not established entitlement to asylum, she cannot meet the higher standard for withholding of deportation. <u>See INS v. Cardoza-Fonseca</u>, 480 U.S. 421, 431-32 (1987). We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>