**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BLANCA MEJIA GRANADOS,
Petitioner,

v.

No. 98-2056

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-116-361)

Submitted: January 29, 1999

Decided: March 29, 1999

Before WIDENER, WILKINS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Onyebuchi N. Enechionyia, Arlington, Virginia, for Petitioner. Frank
W. Hunger, Assistant Attorney General, Karen Ann Hunold, Senior
Litigation Counsel, Thankful T. Vanderstar, Office of Immigration
Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Wash-
ington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Blanca Mejia Granados petitions for review of a final order of the Board of Immigration Appeals (Board) denying her application for asylum and withholding of deportation. Because substantial evidence supports the Board's decision, we affirm.

The Immigration and Nationality Act (Act) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C.A. § 1158(a) (West Supp. 1998). The Act defines a refugee as a person unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998); see M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (en banc).

The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992) (citation omitted); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992).

A finding of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1) (1998). This presumption may be rebutted by evidence demonstrating that there is no longer a reasonable fear of future persecution, such as when conditions in an alien's native country have changed significantly. See 8 C.F.R. § 208.13(b)(2) (1998).

2

Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane. Id. ; Matter of Chen, 20 I. & N. Dec. 16 (BIA 1989).

We must uphold the Board's determination that Granados is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994).* We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by [Granados] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Granados, a native and citizen of Guatemala who entered the United States without inspection in April 1992, disagrees with the Board's finding that she failed to establish past persecution or a well-founded fear of future persecution in her home country based on her political opinion or social group. We conclude substantial evidence supports the Board's finding that Granados did not satisfy her statutory burden.

Evidence at the hearing established that throughout the 1970's and early 1980's, the National Liberation Movement (MLN), was the ruling party of Guatemala. Because they worked for the national police department and served the government, Granados' father and brother joined the MLN and participated in such activities as putting up posters for political activities and meetings. Granados testified that in the mid 1980's, the MLN party was voted out of office and the new party

_____

*We note that 8 U.S.C. § 1105a(a)(4) was repealed by the Illegal Immigration Reform Immigrant Responsibility Act of 1996, Pub. L. No. 104-128, 110 Stat. 3009 (IIRIRA), effective April 1, 1997. Because this case was in transition at the time the IIRIRA was passed, 8 U.S.C. § 1105a(a)(4) is still applicable under the terms of the transitional rules contained in § 309(c) of the IIRIRA.

in power, an "extreme right" group, began a war of terror against MLN members. Several members of the local MLN disappeared, or were murdered. Granados' father and brother lost their jobs in 1985 and left the community because of threats and mistreatment. Later that year, Granados' father and brother disappeared and she believes they were murdered by members of the extreme right group.

For approximately six years after the disappearances, Granados continued to live and attend school in her community. While she and her family were harassed and threatened by extreme right guerrillas during those years, they were never actually harmed. Upon her graduation, Granados moved to the capital city to work. During her months in the capital, she was sexually assaulted on one occasion by an unknown assailant who did not know her name and did not mention politics during the assault. Several months later, she came to the United States to join her boyfriend.

Granados disagrees with the Board's finding that she did not suffer past persecution. We find, however, that substantial evidence supports the Board's finding that there is no evidence Granados was sexually assaulted because of her political opinion or membership in a particular social group. By her own account, the sexual assault appears to have been random in nature. And while Granados contends she suffered past persecution in the form of harassment by extreme right guerrillas, we find such harassment does not rise to the level of persecution. Even if it did, it is not clear from the record that Granados' family was harassed on account of one of the statutory grounds.

We also conclude substantial evidence supports the Board's finding that there is insufficient objective basis for Granados' fear of persecution in Guatemala because of the imputed political opinions of her father and brother or because of her status as a relative of MLN members. Beyond speculation, there is no evidence in the record concerning what actually happened to Granados' father and brother. Their deaths have not even been confirmed. Significantly, Granados remained in her community for six years after their disappearance and was not physically harmed. As noted above, it is not clear that the guerrillas harassed her family because of any imputed political opinion or because they were relatives of MLN members.

4

Granados next contends she demonstrated a pattern of persecution by extreme right guerrillas targeting similarly situated individuals who are relatives of MLN members. See 8 C.F.R. § 208.13(b)(2). However, the record contains no evidence that relatives of MLN members are systematically or pervasively persecuted in Guatemala.

Because Granados has not established eligibility for asylum, she cannot meet the higher standard for withholding of deportation. See INS v. Cardoza-Fonseca, 480 U.S. 421, 430-32 (1987). We accordingly affirm the Board's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED