**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

YOSEPH ESAYAS, a/k/a Yosef Esayas
Hussien,
Petitioner,

v.                                                              No. 98-2472

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-801-291)

Submitted: February 23, 1999

Decided: May 6, 1999

Before WILKINS, HAMILTON, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Onyebuchi N. Enechionyia, Arlington, Virginia, for Petitioner. Frank
W. Hunger, Assistant Attorney General, Civil Division, Richard M.
Evans, Assistant Director, Carl H. McIntyre, Jr., Senior Litigation
Counsel, Office of Immigration Litigation, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Yoseph Esayas petitions for review of a final order of the Board of Immigration Appeals (Board) denying his application for asylum and withholding of deportation. We affirm the Board's decision because there is substantial evidence in the record as a whole that despite the genuine fear of harm that led Esayas to leave Ethiopia, the government's treatment of Esayas does not rise to the level of "persecution" for the purpose of asylum. Furthermore, Esayas does not have a "well-founded fear of persecution" on account of protected grounds if he is returned to Ethiopia.

The Immigration and Nationality Act (INA) authorizes the Attorney General, in her discretion, to confer asylum on any refugee. See 8 U.S.C.A. § 1158(a) (West Supp. 1998). The INA defines a refugee as a person unwilling or unable to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998); M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (en banc). The "well-founded fear of persecution" standard contains both a subjective and an objective component. An applicant may satisfy the subjective element by presenting "`candid, credible, and sincere testimony' demonstrating a genuine fear of persecution." Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element requires a showing of specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution. See Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992). A finding of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. See 8 C.F.R.§ 208.13(b)(1) (1998). This presumption may be rebutted by evidence demonstrating that there is no longer a reasonable fear of future persecution, such as when condi-

2

tions in an alien's native country have changed significantly. See 8 C.F.R. § 208.13(b)(2) (1998). Eligibility for asylum can also be based on grounds of past persecution alone even though there is "`no reasonable likelihood of present persecution.'" Baka v. INS, 963 F.2d 1376, 1379 (10th Cir. 1992) (quoting Rivera-Cruz v. INS, 948 F.2d 962, 969 (5th Cir. 1991)). To establish such eligibility, an alien must show past persecution so severe that repatriation would be inhumane. Id.

We must uphold the Board's determination that Esayas is not eligible for asylum if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C.A. § 1105a(a)(4) (West Supp. 1998). The decision may be reversed only if the evidence presented by Esayas was such that a reasonable fact finder would have to conclude that the requisite fear of persecution existed. See INS v. Elias-Zacarias , 502 U.S. 478, 481 (1992).

Esayas is a citizen of Ethiopia who entered the United States on a nonimmigrant student visa in 1992. His primary motive in leaving Ethiopia was to escape questioning, detention, harassment, and threats by government authorities. Esayas did not attend school upon arrival in the United States, as was required by his visa. He did, however, apply for asylum. The Immigration and Naturalization Service (Service) issued an Order to Show Cause charging Esayas with deportability under the INA § 241(a)(1)(C)(i) for failing to comply with the terms of his visa. He admitted the allegations of fact contained in the Order to Show Cause and conceded deportability. At that time, Esayas requested political asylum, withholding of deportation, and, alternatively, voluntary departure before the immigration court. The immigration court denied his applications for political asylum and withholding of deportation after having found that despite his genuine fears of harm and danger in Ethiopia, Esayas' claims did not fit the current case law's concepts of either past persecution or a well-founded basis to fear persecution. The court granted Esayas voluntary departure.

Esayas appealed to the Board of Immigration Appeals. The Board upheld the immigration court's orders denying political asylum and

3

withholding of deportation and granting voluntary departure. Esayas timely filed a petition for review with this Court.

Esayas' request for asylum was based on questioning, detention, threats, and harassment he experienced because his uncle is a leader in the Oromo Liberation Front (OLF), a political opposition group in Ethiopia. Esayas is not a member of the OLF, nor is he involved in any political activity. The OLF worked in coalition with the Ethiopian People's Revolutionary Democratic Front (EPRDF) to overthrow the brutal Marxist Mengistu Regime that ruled Ethiopia until 1991. The EPRDF and the OLF were the two major political parties of the newly formed Transitional Government of Ethiopia. In 1992, however, conflicts developed between the OLF and the EPRDF, and the OLF withdrew from the coalition government. There were violent clashes between the two groups in 1992.

Esayas testified that he was persistently questioned about his uncle and that government officials demanded that Esayas become an informant by learning and reporting the whereabouts of OLF members. Esayas was frightened that he would be suspected of being an OLF member if he did not comply. On one occasion, the authorities came to Esayas' home and searched his belongings for evidence that he was in contact with his uncle. They found an old letter Esayas had written to his cousin and apparently considered that as proof that Esayas was in touch with his uncle. Esayas testified that he was threatened with death. Government officials detained Esayas several times in the street and once overnight. Esayas testified that when he was jailed overnight, he was released only because one of the government questioners was a childhood friend who intervened and promised officials that Esayas would provide information to authorities. After the overnight detention, Esayas rarely left his home until he secretly moved from Yirga Alem to a town near Addis Ababa. There, he was processed for a visa. Esayas admits that he was not confronted by government officials after he moved, but received reports from his mother that she was being pressured to reveal his whereabouts. Esayas testified that his uncle is in exile and that while government conditions in Ethiopia have changed in some respects, government attitudes toward OLF members have not changed. Esayas believes that his family connections make him a target of the current Ethiopian government. He also believes that his Oromo ethnicity makes him a

4

target of persecution because Oromos are suspected of being members of the OLF.

The record contains evidence of significant turmoil in Ethiopia, and the government's treatment of Esayas is not questioned. However, a central issue is whether that treatment rises to level of "persecution" for the purposes of asylum. The Board agreed with the immigration judge that the experiences described by Esayas do not rise to that level. Regarding Esayas' fear of future persecution, the Board found "nothing in the record to suggest that he would face consequences more severe than those he experienced previously." The Board also found no evidence in the record of a pattern or practice of persecution of the Oromo ethnic group. See 8 C.F.R.§ 208.13(b)(2)(i) (1998); Makonnen v. INS, 44 F.3d 1378, 1383 (8th Cir. 1995) (stating that the term "pattern or practice" means something on the order of organized systematic, or pervasive persecution, but requires less than the persecution of all members of a group). The Board also agreed with the immigration judge's finding that because OLF policy supports a violent overthrow of the current Ethiopian government, general efforts to learn about OLF activities are not persecutory.

A review of the record establishes that the Board's determination is supported by reasonable, substantial, and probative evidence on the record considered as a whole. Although Esayas was detained, threatened, questioned, and harassed by government authorities, that treatment does not rise to the level of persecution for the purposes of asylum. While the INA does not define "persecution," other circuits have given the word a narrow focus. As the Third Circuit stated in Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993),"persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Similarly, the Ninth Circuit has cautioned that "persecution is an extreme concept that does not include every sort of treatment our society regards as offensive." Ghaly v. INS, 58 F.3d 1425, 1431 (9th Cir. 1995) (citations omitted). In the instant case, there is no evidence that Esayas was physically injured or otherwise seriously harmed on account of his Oromo ethnicity or his uncle's political activity. While we do not condone the threats and harassment Esayas experienced, his treatment by Ethiopian authorities does not qualify as persecution. See Zalega v. INS, 916 F.2d 1257, 1260 (7th Cir. 1990).

5

Addressing Esayas' fear of future persecution, there is evidence that political conditions in Ethiopia have improved since Esayas left in 1992. The record establishes that since Ethiopia's August 1995 change in leadership, the Ethiopian government has been more open to opposition political groups that renounce violence, although the OLF has not done so. Even though the current government has, on several occasions, jailed many OLF members, most of these were released after renouncing violence. See Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State: Ethiopia: Profile of Asylum Claims and Country Conditions 10-14 (1995). Furthermore, Esayas admits that he was not harassed by authorities after he moved away from Yirga Alem. His primary concern after leaving was the safety of his mother, who was pressured to disclose his whereabouts. Because Esayas' mother has died since he left Ethiopia, he will not have the same fears about her safety if he is returned. In this case, the evidence simply does not compel the conclusion that Esayas will be subjected to persecution upon his return to Ethiopia because of his family ties.

The record also supports the Board's determination that Esayas does not have a well-founded fear of persecution based on his Oromo ethnicity. Although ethnic clashes do continue to occur in Ethiopia, the record shows that in 1995, the Ethiopian Parliament elected an Oromo as president and Oromos took over four cabinet positions. Id. at 5. In addition, the record shows that Esayas has two sisters in Ethiopia, who apparently are also Oromo, and who have not been subject to harassment by government officials. The record does not, therefore, compel the conclusion that Esayas will suffer persecution because of his Oromo ethnicity.

Because Esayas fails to meet the burden of proof for asylum, he necessarily fails to meet the higher standard for withholding of deportation. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431-32 (1987).

For these reasons, we deny Esayas' petition for review and affirm the decision of the Board. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED